**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NGUYEN BUREN, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13 cv 498 |
| DOCTOR'S ASSOCIATES, INC, a Florida corporation, | ) ) ) | |
| Defendant. | ) | Jury Trial Demanded |

# NATIONWIDE CLASS ACTION COMPLAINT

NOW COMES Plaintiff Nguyen Buren ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, and complains of Defendant Doctor's Associates, Inc. ("Defendant"), as follows:

**Nature of the Case**

1.    Plaintiff brings this action individually and on behalf of a proposed class (the "Class"), as more fully defined below, of similarly situated consumers throughout the United States to redress the pervasive pattern of fraudulent, deceptive and otherwise improper advertising, sales and marketing practices that Defendant continues to engage in regarding the length of purported "Footlong" submarine sandwiches ("subs"), which are a core product sold by Defendant's SUBWAY® restaurants.  In reality, Defendant's "Footlong" subs are not one foot, or 12 inches, in length.

2.    As more fully alleged herein, Defendant's schemes or artifices to defraud Plaintiff and other members of the proposed Class consist of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet websites and

postings, point of purchase advertisements and national print advertisements, all of which are intended to trick unsuspecting consumers, including Plaintiff and other members of the proposed Class, into believing that they are receiving more food for their money than they actually are.

3. SUBWAY® is a registered trademark of Defendant, and Defendant franchises SUBWAY® restaurants throughout the world. Defendant's SUBWAY® brand franchise is the world's largest submarine sandwich chain, with more than 38,000 locations around the world, including approximately 24,000 locations in the United States.

4. Defendant and its franchisees heavily market SUBWAY® "Footlong" subs as actually being 12 inches—a "foot"—long. This is made clear in Defendant's marketing campaigns, which often refer to the measurement unit of one foot, or refer to measurements generally, when advertising the "Footlong" subs. However, the "Footlong" subs that SUBWAY® sells to its customers are materially shorter than the advertised 12 inches. As a result, consumers are receiving less than they are paying for.

5. Defendant's comprehensive nationwide advertising campaign for SUBWAY® "Footlong" subs has been extensive, and Defendant has spent a significant amount of money to convey deceptive messages to consumers throughout the United States. Defendant utilizes a wide array of media to convey its deceptive claims about SUBWAY® "Footlong" subs, including television, magazines, and the Internet. Indeed, SUBWAY® "Footlong" subs have been heavily endorsed by celebrities and athletes. Through this massive marketing campaign, Defendant has conveyed one message about these subs, inherent in the name: "Footlong" subs are actually a foot (*i.e.* 12 inches) long. Each person who has purchased SUBWAY® "Footlong" subs, including the Plaintiff, has been exposed to Defendant's misleading advertising message and purchased those subs as a result of that advertising.

6.      Plaintiff brings this action on behalf of himself and other similarly situated consumers throughout the United States to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception that they have created in the minds of consumers, and obtain redress for those who have purchased SUBWAY® "Footlong" subs.

7.      Plaintiff alleges violations of the consumer fraud statutes of all fifty (50) states and the District of Columbia, as well as unjust enrichment under the laws of all fifty (50) states and the District of Columbia.

**Jurisdiction and Venue**

8.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d). The proposed Class involves more than 100 individuals. A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

9.      Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred in this district.

**The Parties**

10.      Plaintiff Nguyen Buren is, and at all time relevant to this action has been, a resident and citizen of Illinois.

11.      Plaintiff was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Illinois, including in the Northern District of Illinois. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff purchased a "Footlong" sub to eat on January 20, 2013 at the SUBWAY® restaurant located at 1427 West Montrose Avenue, Chicago, Illinois.

3

12.     Plaintiff purchased the "Footlong" sub in reliance on the misrepresentations and omissions of the Defendant.  Plaintiff suffered an injury in fact and lost money as a result of the deceptive and unfair conduct described herein, because the "Footlong" sub that he purchased was less than eleven (11) inches in length, which is materially (*i.e.* approximately 10%) shorter than the 12 inches, or one foot, in length, represented by Defendant, as follows:



13.     Defendant is a private corporation incorporated in the State of Florida, and has its principal place of business in Milford, Connecticut.  Defendant, therefore, is a citizen of Florida and Connecticut.

14.     Defendant, as the franchisor of SUBWAY® restaurants, is in the business of promoting, marketing, distributing and selling SUBWAY® "Footlong" subs throughout the United States, including to millions of consumers nationwide, through approximately 24,000 SUBWAY® brand restaurants worldwide.  Although SUBWAY® restaurants are owned and/or operated by franchisees, Defendant creates, maintains and enforces strict uniform standards and practices for all aspects of its SUBWAY® restaurants, including the length of "Footlong" subs.

15.     Upon information and belief, Defendant has the right of complete or substantial control over all SUBWAY® restaurants in that it could implement and direct the policies and

procedures of those restaurants as well as dictate the restaurants' appearance, equipment, menu, hours of operation, employees' appearance and demeanor, and marketing and advertising. Defendant represents that its centralized Operations department of its business "enforces standards and provides training and operational assistance to franchisees and field staff." (*See* Subway Student and Educator Resource Guide ("Resource Guide"), attached hereto as Exhibit A, p. 3).

16.    Further, Defendant and its franchisees hold themselves out to the general public as one company—SUBWAY®—as evidenced by the fact that the advertising materials, signs, and store appearance all are uniform and identify Defendant's franchisees' restaurants as SUBWAY®.  For example, Defendant represents that its centralized Marketing department of its business "presents the public face of SUBWAY®. It includes departments like Research & Development, which develops and test markets the food that we serve, and FAF (Franchisee Advertising Fund) – responsible for the creation and placement of commercials and print ads." (Resource Guide, Exhibit A, p. 3).

17.    Defendant's actions were intended to and did lead Plaintiff and members of the proposed Class to believe that all SUBWAY® restaurants had uniform standards and practices, and that all menu items would be the same at each SUBWAY® restaurant. Plaintiff and members of the Class justifiably relied on Defendant's and its franchisees' representations that the food would be identical in all material respects at each SUBWAY® restaurant.

## Substantive Allegations

18.    Defendant engages in an extensive, nationwide advertising and marketing campaign of its SUBWAY® "Footlong" subs, consisting of print, television, Internet-based media and in-store advertisements.  Defendant proudly boasts of the ubiquity of its marketing

efforts, representing that "[t]he majority of advertising happens on national TV during prime time, sports and late programming on major broadcast networks and cable networks. Additional advertising occurs via local markets on TV, radio and print. SUBWAY® restaurants is also navigating the world of online social media to bring our message closer to consumers." (Resource Guide, Exhibit A, p. 3).

19.     Defendant's advertisements relating to SUBWAY® "Footlong" subs are intended to convey to consumers that the subs are actually one foot, or 12 inches, in length.

20.     Indeed, in its marketing and advertising materials, Defendant repeatedly references the length of the "Footlong" subs by having its actors (or artists' renderings) hold their hands approximately one foot apart, and including a graphic between the actors' hands indicating that the hands are "1 FT." (short for one foot) apart, as follows:



21.     Moreover, some of Defendant's advertisements do not specifically reference one foot, or 12 inches, but they are designed to show that the "Footlong" name is associated with a measurement, by, for instance, using arrows to indicate size, as follows:



22.     Defendant also advertises, markets, advertises and offers 6 inch (designated by Defendant as 6") subs for purchase at its SUBWAY® restaurants.  These 6 inch subs are created by Defendant's employees by simply cutting the bread used for "Footlong" subs in half, and then preparing the 6" subs to its customers' specifications.  Accordingly, because Defendant's "Footlong" subs are less than 12 inches in length, SUBWAY® 6 inch subs are also shorter than advertised.

23.     Defendant designed, created and enforces uniform standards and practices that each of its and its franchisees' employees must follow relative to making SUBWAY® menu items for customers, including SUBWAY® "Footlong" subs.  Employees are required to undergo training programs regarding these uniform standards and practices, and are not permitted to deviate therefrom.

24.     Additionally, Defendant's franchisees are required to get their bread from a centralized supply source, which stretches the dough out to a pre-set length according to Defendant's specifications, and freezes it before delivering the frozen dough to SUBWAY®

restaurants. This pre-set length specified by Defendant is the primary factor in how long SUBWAY® "Footlong" subs will be.

25. At the time that Plaintiff purchased his SUBWAY® "Footlong" sub, Defendant was misrepresenting the length of its "Footlong" subs through the advertising and marketing mediums set forth above, including marketing and advertising materials at the specific store from which Plaintiff made his purchase.

26. Defendant's standards and practices relative to the creation of SUBWAY® "Footlong" subs result in the subs routinely being materially shorter than one foot, or 12 inches, in length.

27. This is not the first time Defendant has engaged in misrepresentations regarding the length of SUBWAY® subs. In 2007, it was reported that SUBWAY® "Giant Sub" sandwiches, which were advertised as being 3 feet long, were materially shorter than advertised (*i.e.* 2 feet 8½ inches long, and the box that they came in was only 2 feet 10¾ inches long). Because of the complaints about Defendant's advertising at the time, Defendant had knowledge that the precise length of SUBWAY® subs is material to its customers, and that its customers rely on Defendant's representations regarding the length of the subs when purchasing them.

28. As discussed below, Defendant's statements regarding SUBWAY® "Footlong" subs, in conjunction with the impression regarding the length of those subs Defendant intended to convey by naming and promoting them as "Footlong" subs, were false, deceptive and misleading. Plaintiff and the proposed Class members purchased SUBWAY® "Footlong" subs in reliance on the foregoing uniform misrepresentations and omissions of the Defendant.

29. As a result of SUBWAY® "Footlong" subs not being as long as advertised, Plaintiff and the proposed Class members received less food then they were promised by

8

Defendant, and paid an inflated price for the "Footlong" subs that they would not otherwise have paid.

## **Class Action Allegations**

30.     Plaintiff brings this lawsuit, both individually and as a class action on behalf of similarly situated purchasers of the SUBWAY® "Footlong" subs, pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The proposed Class is defined as:

> All persons in the United States who purchased SUBWAY® "Footlong" submarine sandwiches that were less than 12 inches long.

Excluded from the proposed Class are Defendant, its respective officers, directors and employees, any entity that has a controlling interest in Defendant, and all of its respective employees, affiliates, legal representatives, heirs, successors, or assignees.  Any claims for personal injury or consequential damages, not otherwise permitted under the facts pled herein, are expressly excluded from this action.  Plaintiff reserves the right to amend the Class definition as necessary.

31.     Upon information and belief, the Class comprises millions of consumers throughout the nation, and is so numerous that joinder of all members of the Class is impracticable.  While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiff believes that there are millions of Class members based upon the fact that SUBWAY® is one of the largest, if not the largest, restaurant chains in the world, with over 38,000 restaurants worldwide, and "Footlong" subs are the core product sold by SUBWAY®.

32.     There are questions of law and fact common to the Class, which predominate over any individual issues, including:

a.     whether Defendant represented that SUBWAY® "Footlong" subs were one foot, or 12 inches, in length;

b.     whether Defendant failed to disclose that SUBWAY® "Footlong" subs were less than 12 inches in length;

c.     whether Defendant's claims regarding the SUBWAY® "Footlong" subs are deceptive or misleading;

d.     whether Defendant engaged in false, deceptive and/or misleading advertising;

e.     whether Defendant's conduct as alleged herein violates the consumer fraud statutes of the various States and the District of Columbia;

f.     whether Defendant's conduct as alleged herein violates public policy;

g.     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

h.     whether Plaintiff and Class members are entitled to declaratory and injunctive relief; and

i.     whether Defendant was unjustly enriched.

33.     Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests antagonistic to those of the proposed Class.  Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation.  The questions of law and fact common to the proposed Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

35. Unless a class is certified, Defendant will retain monies received as a result of its conduct that was wrongfully taken from Plaintiff and proposed Class members. Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the proposed Class and the general public will continue to be misled.

36. Defendant has acted and refuses to act on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Class as a whole.

**COUNT I**
**(Violation of the Consumer Fraud and Deceptive Trade Practices Acts**
**of the Various States and District of Columbia)**

37. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 36 with the same force and effect as though fully set forth herein.

38. Plaintiff brings Count I individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

    a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*

    b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

    c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

    d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

    e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

    f. the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

    g. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.      the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.      the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.      the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.      the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.      the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.      the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.      the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.      the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

aa. the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc. the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

dd. the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*

ee. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ff. the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg. the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

ii. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

jj. the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

kk. the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

mm. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

13

ss.    the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt.    the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.    the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv.    the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww.    the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.    the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy.    the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz.    the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

39.    Defendant's foregoing misrepresentations and omissions regarding the length of SUBWAY® "Footlong" subs, as set forth in Paragraph Nos. 18-29, are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

40.    Defendant intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiff and the proposed Class members would not have purchased the SUBWAY® "Footlong" subs.

41.    Defendant's practice of creating, approving and distributing advertising for SUBWAY® "Footlong" subs that contained false and misleading representations regarding the length of those subs for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

42.     Defendant intended to be deceptive and unfair to Plaintiff and the proposed Class by unlawfully representing that each of SUBWAY® "Footlong" subs are 12 inches, or one foot, in length.  Defendant's intent is evidenced by, *inter alia*, its heavy reliance on units of measurement, such as the "1 FT." graphic displayed in its advertising for the "Footlong" subs, as well as the fact that Defendant named its subs "Footlong."

43.     Defendant intended that Plaintiff and the proposed Class members rely on Defendant's misrepresentations as to the length of the SUBWAY® "Footlong" subs when purchasing them, and Defendant omitted to disclose to or notify Plaintiff and the proposed Class that the SUBWAY® "Footlong" subs were materially less than one foot, or 12 inches, in length.

44.     Plaintiff and the proposed Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the SUBWAY® "Footlong" subs after seeing Defendant's advertising.  Indeed, Defendant made no attempt to inform consumers that SUBWAY® "Footlong" subs are not uniformly 12 inches, or one foot, in length.

45.     Had Plaintiff and the proposed Class members known the truth, they would not have purchased the SUBWAY® "Footlong" subs.

46.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the SUBWAY® "Footlong" subs to Plaintiff and the proposed Class members.

47.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

48.     As a direct and proximate result of the foregoing, the Plaintiff and Class members have been damaged in an amount to be determined at trial.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.  Designating Plaintiff as representative of the Class, and his undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.  Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.  Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

F.  Awarding Plaintiff and the Class their actual damages, treble damages, punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

G.  Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
### (Unjust Enrichment)

49.  Plaintiff repeats and realleges the allegations of Paragraphs 1 through 36 with the same force and effect as though fully set forth herein.

50.  Plaintiff brings this claim individually, and on behalf of all similarly situated residents in and under the unjust enrichment laws of each of the 50 states and the District of Columbia.

51.  As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

52.     Specifically, by its misconduct described herein, Defendant has accepted a benefit (*i.e.,* monies paid by Plaintiff and the proposed Class members for the purchase of the SUBWAY® "Footlong" subs) to the detriment of Plaintiff and the proposed Class.

53.     Defendant's retention of the full amount of monies paid for the SUBWAY® "Footlong" subs violates the fundamental principles of justice, equity, and good conscience.

54.     Defendant accepted the benefit based on its misrepresentations and omissions regarding the SUBWAY® "Footlong" subs to the Plaintiff and the proposed Class members, and it would be inequitable for the Defendant to retain the benefit of those monies, as it was paid the money under false pretenses.

55.     Defendant has obtained money to which it is not entitled, and interest on that money, and under these circumstances equity and good conscience require that the Defendant return the money with interest to the Plaintiff and the proposed Class.

56.     As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class, and his undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.     Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.     Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

F.     Awarding Plaintiff and the Class their actual damages, treble damages, punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

G.     Granting all such further and other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by a 12-person jury.

Plaintiff NGUYEN BUREN, individually, and on behalf of all others similarly situated,

By:  ___s/ Thomas A. Zimmerman, Jr.___
  Thomas A. Zimmerman, Jr. (IL #6231944)
  Adam M. Tamburelli (IL #6292017)
  ZIMMERMAN LAW OFFICES, P.C.
  77 West Washington Street, Suite 1220
  Chicago, Illinois 60602
  (312) 440-0020 Telephone
  (312) 440-4180 Facsimile
  www.attorneyzim.com

Counsel for the Plaintiff and Class



# WELCOME TO THE STUDENT AND EDUCATOR RESOURCE GUIDE

This Student Guide has been prepared to provide general information and guidelines concerning Doctor's Associates Inc. "DAI" and its affiliates, operations, and procedures. DAI and its affiliates reserve the right to modify, revoke, or otherwise change the details in this Student Guide in whole or in part with or without notice.

**EXHIBIT A**



# Welcome to SUBWAY® Restaurants!

This guide is designed to help answer the many questions you may have about SUBWAY® Restaurants.

SUBWAY® Restaurants is a registered trademark of **Doctor's Associates Inc. (DAI)**, located in Milford, Conn., USA.

### OUR MISSION STATEMENT

Delight every customer so they want to tell their friends – with great value through fresh, delicious, made-to-order sandwiches, and an exceptional experience.

### OUR CORE VALUES AND PHILOSOPHY

- **Family** – We build our business relationships by serving each other, our customers and our communities, much as we do within our own families.

> **SUBWAY®'s Vision:** Be the #1 Quick Service Restaurant (QSR) franchise in the world, while delivering fresh, delicious sandwiches and an exceptional experience.

- **Teamwork** – We challenge ourselves and each other to succeed through teamwork, against shared goals and to be accountable for our responsibilities.

- **Opportunity** – We create an entrepreneurial, ever-growing SUBWAY® community, increasing the opportunity for everyone.

# The History of SUBWAY®

It was the summer of '65. Having just graduated from high school, 17-year-old Fred DeLuca turned his thoughts toward achieving a higher education. That summer, there wasn't much hope that Fred would have enough money to pay for his college tuition. He was a hard-working young man but his $1.25-per-hour minimum wage job wasn't enough. He decided to ask Dr. Pete Buck, a nuclear physicist and longtime DeLuca family friend, for some financial advice. When he learned how badly Fred had wanted to go to college, maybe the doctor would offer to help.

Instead, Dr. Buck had a rather unusual idea.

"I think you should open a submarine sandwich shop," said Buck. Before Fred could think about it or express his surprise, he heard himself say, "How does it work?"

Dr. Buck explained the submarine sandwich business. Customers would come in, put money on the counter and Fred would have enough to pay for college. To Dr. Buck, it was just as simple as that, and if young Fred was willing to do it, Dr.



Buck was willing to be his partner. He pulled out his checkbook and wrote a check for $1,000. The first restaurant, then called Pete's Super Submarines, opened that year.

45 years and more than 35,000 restaurants later, Fred DeLuca remains the President of SUBWAY®.

# SUBWAY® Departments – Who We Are

The SUBWAY® franchise is the world's largest submarine sandwich franchise and the second-largest restaurant franchise in the world. Here are just some of the diverse departments that are required to run a truly world-class operation:

- **Executive:** This team supports company-wide operations at SUBWAY®'s headquarters in Milford, CT and includes departments like Customer Care and the Business Process Team.
- **Administrative**: This team is responsible for DAI employee management and grounds and shipping center oversight.
- **Franchise Brands**: This team offers a diversified portfolio of new and promising ideas that will improve the SUBWAY® experience for franchisees and their customers.
- **Development**: This team works closely with potential franchisees who wish to open a SUBWAY® restaurant and includes everything from real estate planning to recruiting new franchisees.
- **Operations**: This team enforces standards and provides training and operational assistance to franchisees and field staff.
- **Technology**: This team is responsible for implementing and maintaining all technology systems throughout the company and providing technology initiatives so franchisees can operate their businesses more efficiently.
- **Marketing**: This plank presents the public face of SUBWAY®. It includes departments like Research & Development, which develops and test markets the food that we serve, and FAF (Franchisee Advertising Fund) – responsible for the creation and placement of commercials and print ads.
- **International**: This plank supports franchisees outside of the United States and Canada.
- **Finance**: This plank is responsible for tracking, organizing and reporting on the financial activities within DAI.
- **Legal**: This department is responsible for ensuring DAI and SUBWAY® comply with national and international laws, customs and ordinances.

## WHAT IS DAI?

Doctor's Associates Inc. (DAI) is the franchisor of the SUBWAY® system and the corporation that owns the SUBWAY® service mark. The name was chosen by Dr. Peter Buck and Fred DeLuca in 1966. Dr. Buck was a nuclear physicist by profession, and Fred had aspirations of attending medical school to become a doctor. So, the name Doctor's Associates Inc. seemed to fit their situation.

## WHAT IS FWH?

Franchise World Headquarters, LLC (FWH) is a service organization for the SUBWAY® brand. DAI remains the trademark holder and franchisor of SUBWAY® restaurants in the US. FWH serves not only DAI, but also Subway Franchise Systems of Canada, Subway International BV, Subway Real Estate, LLC, Franchise Brands and other franchisors and SUBWAY® leasing companies.  FWH is located in Milford, Conn.

## ADVERTISING

The target for the SUBWAY® franchise's media buying is adults aged 18-49. The majority of advertising happens on national TV during prime time, sports and late programming on major broadcast networks and cable networks. Additional advertising occurs via local markets on TV, radio and print. SUBWAY® restaurants is also navigating the world of online social media to bring our message closer to consumers.

The Franchisee Advertising Fund, or FAF, creates advertising for SUBWAY®. FAF employs a national media agency to advertise for SUBWAY®, a public relations agency responsible for messaging and promotion of new products and programs and also interacts with local advertising agencies throughout the world.



# Where We've Been – And Where We're Going!

From one store in 1965 to over 35,000 stores around the world, SUBWAY® restaurants come in any location and every shape and size that you can imagine.

## UNIQUE STORE LOCATIONS



The simplicity of the SUBWAY® concept and the ability to fit into spaces that our competitors cannot enables us to open restaurants in many unusual sites, such as airports, amusement parks, stadiums, colleges and universities, hospitals, military bases, schools, supermarkets and truck stops.  Here are a few unique SUBWAY® sites:

- **Clyde Peelings Reptileland**, Allenwood, PA
- **Bingoland Bingo Hall**, Killeen, TX
- **Duds & Suds**, Omaha, NE
- **Discovery Center Museum**, Fort Lauderdale, FL

Today, there are over 8,000 non-traditional SUBWAY® restaurants operating around the world. For more details about non-traditional locations, and other types of SUBWAY® restaurants, visit Own a Franchise on subway.com.

## INTERNATIONAL LOCATIONS

In 1984, the SUBWAY® franchise opened its first international location in Bahrain. Today, there are more than 15,000 locations outside the U.S.

To find SUBWAY® restaurants around the globe, check out store counts by country.

# Franchising 101

## THE SUBWAY® FRANCHISE

DAI owns the operational business concept and trademark of SUBWAY® Restaurants. It is the franchisor and seeks to find entrepreneurs, or franchisees to partner with. The franchisee buys the right to operate the SUBWAY® franchise according to DAI's contract.

> **fran·chise, 'fran-"chlz, *noun.***
> A special privilege granted to an individual or group: the right to be and exercise the powers of a corporation: the right or license granted to an individual or group to market a company's goods or services.

## FORMING THE FRANCHISE

In 1974, the SUBWAY® brand's founders met with their attorney to discuss the future of their business. Talk turned to franchising. Being behind schedule in achieving his goals, SUBWAY® President Fred DeLuca decided that the fastest way to expand the business was to find a franchisee. He approached Brian Dixon, a friend. Fred offered to loan him the money to buy their store located in Wallingford, Conn. Soon after, Brian Dixon's life, and the future of SUBWAY®, changed forever.



# SUBWAY® by the Numbers

Founded in 1965, SUBWAY® restaurants has done a lot of growing up over the years. Here are some handy numbers to quantify and explain SUBWAY®'s business trajectory, spanning almost five decades.

**Figure 1.**



This chart illustrates the J-curve principle of upward growth for SUBWAY®, spanning only the last five years! By the end of 2010, SUBWAY® projects to have 34,250 open stores across the globe.*

*Projected as of May 2010.

**Figure 2**.
Figure 2 more clearly illustrates SUBWAY®'s growth over time.



# Community Involvement

The SUBWAY® franchise and its more than 35,000 stores are very active in the community. Many of the franchise owners and their employees help support their local communities through monetary and product donations. Their assistance has helped benefit many non-profit organizations and charities, as well as schools and clubs.

The corporate headquarters also assists many organizations, including the American Cancer Society, American Heart Association, Big Brothers/Big Sisters, Conservation International, United Way, the National Foundation for Teaching Entrepreneurship, Multiple Sclerosis Society of America, and many organizations local to the Milford, Conn. HQ.





To learn more about SUBWAY®'s community service or request a sponsorship, click here.



# More Questions About SUBWAY®?

For other questions and inquiries, submit a Comment/Question Query here, or call or write to:

> **SUBWAY FRANCHISE HEADQUARTERS**
> **325 Bic Drive**
> **Milford, Connecticut, USA 06461-3059**
> **Phone: (203) 877-4281 or**
> **toll-free at: 1-800-888-4848**

For answers to more Frequently Asked Questions about SUBWAY®, click here.



**Statement of Ownership and Restrictions on Use:**
All materials contained in this Guide are owned by DAI and may not be copied, distributed, modified, reproduced, republished, reused, uploaded, transmitted, or otherwise used without prior written consent of DAI.

**Trademark Information**:
The following trademarks, among others, are registered to Doctor's Associates Inc. in the U.S.A. and other countries: SUBWAY®, the SUBWAY® logo.
© 2010 Doctor's Associates Inc. All Rights Reserved.